Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHELLE RENEE HUGHES,<br><br>Defendant. | NO. CR19-124RSM<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Angelica Williams, Assistant United States Attorney for said District, Defendant Michelle Renee Hughes, and Defendant's attorney, Corey Endo, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1.  **The Charges.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters pleas of guilty to the following charges contained in the Indictment.

    a.   Mail Fraud, as charged in Counts 1 and 2, in violation of Title 18, United States Code, Section 1341.

    b.   False Statements, as charged in Counts 3, 4, 5, and 6, in violation of

Plea Agreement - 1
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Title 18, United States Code, Section 1001.

      c.      Aggravated Identify Theft, as charged in Counts 7 and 8, in violation of Title 18, United States Code, Section 1028A.

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty pleas, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

    2.    **Elements of the Offenses**. The elements of the offenses to which Defendant is pleading guilty are as follows:

      a.      The elements of Mail Fraud, as charged in Counts 1 and 2, are as follows:

*First*, the defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

*Second*, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

*Third*, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

*Fourth*, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

      b.      The elements of False Statement, as charged in Counts 3, 4, 5, and 6 are as follows:

*First*, that the defendant knowingly made a false statement in a matter within the jurisdiction of the United States;

*Second*, the defendant acted willfully, that is, deliberately and with knowledge the statement was untrue and that her conduct was unlawful; and

Plea Agreement - 2
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Third*, the statement was material to the activities of the United States, that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

    c.    The elements of Aggravated Identity Theft, as charged in Counts 7 and 8 are as follows:

*First*, the defendant knowingly transferred, possessed, or used a means of identification of another person without lawful authority;

*Second*, the defendant knew that the means of identification belonged to another person; and

*Third*, the defendant did so during and in relation to a felony listed in 18 U.S.C. § 1028A(c) (in this case, forging the signature of the true owners in the two AC Form 8050-2 as charged in Counts 3 and 5).

    3.    **The Penalties.** Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

    a.    For the offense of Mail Fraud, as charged in Counts 1 and 2: A maximum term of imprisonment of up to 20 years, a fine of up to $ 250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five (5) years.

    b.    For the offense of False Statement, as charged in Counts 3, 4, 5, and 6: A maximum term of imprisonment of up to five years, a fine of up to $ 250,000, a period of supervision following release from prison of up to one years and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five (5) years.

    c.    For the offense of Aggravated Identity Theft, as charged in Counts 7 and 8: A statutory term of imprisonment of two years, consecutive to the imposition of any other sentence, a fine of up to $ 250,000, a period of supervision following release from prison

Plea Agreement - 3
*U.S. v. Michelle Renee Hughes*, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of up to one year, and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five (5) years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

4. **Immigration Consequences**. Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any

Plea Agreement - 4
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

immigration consequences that Defendant's guilty pleas may entail, even if the consequence is Defendant's mandatory removal from the United States.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

   a. The right to plead not guilty and to persist in a plea of not guilty;

   b. The right to a speedy and public trial before a jury of Defendant's peers;

   c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

   d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

   e. The right to confront and cross-examine witnesses against Defendant at trial;

   f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

   g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

   h. The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes

Plea Agreement - 5
*U.S. v. Michelle Renee Hughes*, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

    a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

    b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

    c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

    d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7.    **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8.    **Statement of Facts**. The parties agree on the following facts. Defendant admits Defendant is guilty of the charged offenses of Mail Fraud (two counts), False Statements (four counts) and Aggravated Identity Theft (two counts):

J.M. is the legal owner of a Piper P-44-180T aircraft, serial number 44-8107055 (hereinafter "Piper"). To legally register an aircraft, the Federal Aviation Administration (FAA) requires an aircraft registration form (AC Form 8050-1), evidence of ownership such as a Bill of Sale (AC Form 8050-2), and a five dollar registration fee. Upon receiving these items, the FAA will list the new owner on the FAA public website. Aircraft brokers utilize subscription services to collect data from the FAA on aircraft ownership, ownership records, contact information, and sale activity. The brokers rely on

Plea Agreement - 6
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the information provided by the FAA to negotiate sales and/or purchases on behalf of clients. Washington law (RCW 47.68.250) requires that in addition to FAA registration, aircraft owners must also register their aircraft with the WSDOT. As part of this process, WSDOT routinely downloads aircraft registration information from the FAA.

In early May 2019, the Washington State Department of Transportation (WSDOT) contacted J.M. to confirm cancellation of his aircraft registration based on his alleged sale of the Piper to HUGHES. When J.M. denied selling the Piper, the WSDOT submitted the Piper's AC Form 8050-2 (Bill of Sale) to the FAA for further review. The FAA independently received an AC Form 8050-2 and an AC Form 8050-1 (aircraft registration form) for J.M.'s Piper from HUGHES. The AC Form 8050-1, which contained a jurat attesting to the information on the form that HUGHES is the Piper's owner, is accurate. The jurat is the clause at the end of the AC Form 8050-1 stating the information contained on the AC Form 8050-1 is true, accurate and correct to the best of the signatory's knowledge and belief.

The AC Form 8050-2 listed HUGHES as the purchaser of the Piper for the purchase price of $115,000. HUGHES forged J.M.'s signature in the seller's signature line, knowing that J.M. is an actual person. HUGHES mailed the forged documents to the "FAA Aircraft Registration Branch" in Oklahoma, intending for the FAA to rely upon the falsified documents. The FAA did rely upon the falsified documents and listed HUGHES as the owner of J.M.'s Piper. HUGHES dated the documents February 25, 2019, and the FAA received the documents on March 5, 2019. HUGHES mailed a second forged AC Form 8050-2 on March 15, 2019. The second form contains a phone number for HUGHES that she omitted on the first forged AC Form 8050-2.

On May 20, 2019, Homeland Security Investigations (HSI) SA Ly Tran observed a post on www.aerotrader.com advertising J.M.'s Piper for sale with an asking price of $125,000. When SA Tran responded to the ad, indicating he was interested in purchasing the Piper, HUGHES replied, providing an email address and requesting a $40,000 down payment. In addition to the email, HUGHES sent two text messages from the phone

Plea Agreement - 7
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

number listed on the AC Form 8050-1 regarding the proposed sale of J.M.'s Piper. HUGHES also offered to enter into co-ownership of the Piper with SA Tran and told SA Tran the Piper could be test flown at any time.

On June 12, 2019, SA Tran and HUGHES met in Federal Way so that SA Tran could provide a partial cash down payment of $1000. During the meeting HUGHES identified herself as the Piper's owner and accepted the $1000.

HUGHES has never legally owned J.M.'s Piper aircraft and intentionally forged J.M.'s signatures on the AC Form 8050-2 he mailed to the FAA in Oklahoma. HUGHES knew the statement identifying herself as the owner of J.M.'s Piper attested to on the AC Form 8050-1 was false. HUGHES knowingly and intentionally made the false statement knowing it was material to the FAA and would be relied upon by the FAA resulting in the FAA changing the listed registered owner to HUGHES, which brokers and other interested parties would rely on in seeking to purchase the Piper.

A.E. is the legal owner of a Cessna Citation Mustang, serial number 510-0095. On April 26, 2019, HUGHES submitted an AC Form 8050-2 listing herself as the purchaser of A.E.'s Cessna with a purchase price of $1,500,000. HUGHES forged A.E.'s signature in the seller's signature line, knowing that A.E. is an actual person. Along with the AC Form 8050-2, HUGHES submitted an AC Form 8050-1 with a jurat attesting to that the information on the form, that HUGHES is the Cessna's owner, is accurate. HUGHES mailed both forms to the same FAA Oklahoma address on April 29, 2019, intending for the FAA to rely upon the falsified documents. The FAA did rely upon the falsified documents and listed HUGHES as the owner of A.E.'s Cessna.

On May 24, 2019, a customer service supervisor with Textron Aviation informed A.E. that Textron had received a change of ownership notification for the Cessna. Textron held a prepaid maintenance contract with A.E. such that any change in ownership required the contract to be rewritten. When A.E. denied selling the plane, Textron sent him copies of HUGHES fraudulent AC Form 8050-1 and AC Form 8050-2.

Plea Agreement - 8
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Upon seeing the fraudulent documents, A.E. reported it to the DOT Inspector General's Office and requested that the FAA void the fraudulent transaction.

A.E. provided HSI with an email from J.H., who works for an aircraft broker based in Wisconsin, that utilizes a subscription service called "JETNET" to collect information on aircraft ownership from the FAA. J.H. represented a client wanting to purchase a Cessna Citation Mustang. J.H. utilized JETNET to identify all current Cessna Citation Mustang owners and then sent solicitation letters to inquire if any were interested in selling their airplane. On June 3, 2019, HUGHES responded to J.H.'s letter and offered to sell A.E.'s Cessna Citation Mustang for $2,500,000.

HUGHES has never legally owned A.E.'s Cessna aircraft and intentionally forged A.E.'s signature on the AC Form 8050-2 she mailed to the FAA in Oklahoma. HUGHES knew the statement identifying herself as the owner of A.E.'s attested to on the AC Form 8050-1 was false. HUGHES intentionally made the false statement knowing it was material to the FAA and would be relied upon by the FAA, resulting in the FAA changing the listed registered owner to HUGHES, which brokers such as J.H. and their clients would rely on in seeking to purchase the Cessna.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9. **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provisions apply to this case:

a. The base offense level is seven pursuant to USSG § 2B1.1(a)(1).

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated

Plea Agreement - 9
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Acceptance of Responsibility.** At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11. **Agreed Recommendation Regarding Imprisonment.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the parties jointly agree to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term of fifty-two (52) months. Included in this 52-month recommendation is the statutory Aggravated Identity Theft 24-month sentence on counts seven and eight that will run consecutive to a 28-months recommendation on counts one through six, for a total custodial recommendation of 52 months. The Government will recommend that the two Aggravated Identity Theft counts run concurrent to each other. Defendant understands that this recommendation is not binding on the Court and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

12. **Restitution.** Defendant agrees that the Court can order Defendant to pay restitution to the victims of Defendant's crimes and, in exchange for the agreements by the United States contained in this plea agreement, Defendant agrees that restitution in this case should not be limited to the offense(s) of conviction. Defendant is aware that

Plea Agreement - 10
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the United States will present evidence supporting an order of restitution for all losses caused by all of Defendant's criminal conduct known to the United States at the time of Defendant's guilty plea(s) to include those losses resulting from crimes not charged or admitted by Defendant in the Statement of Facts. In exchange for the promises by the United States contained in this plea agreement, Defendant agrees that Defendant will be responsible for any order by the District Court requiring the payment of restitution for such losses.

   a. The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible. If the Court finds that the defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing assets that come to light only after the district court finds that the defendant is unable to make immediate restitution.

   b. Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial obligations to be imposed in connection with this prosecution. Defendant's cooperation obligations are: (1) before sentencing, and no more than 30 days after executing this Plea Agreement, truthfully and completely executing a Financial Disclosure Statement provided by the United States Attorney's Office and signed under penalty of perjury regarding Defendant's and Defendant's spouse's financial circumstances and producing supporting documentation, including tax returns, as requested; (2) providing updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven

Plea Agreement - 11  
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

days of the event giving rise to the changed circumstances; (3) authorizing the United States Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information; (5) authorizing the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the United States Attorney's Office), and fully and truthfully answering questions during such interview; and (7) notifying the United States Attorney's Office before transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

c. The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).

13. **Forfeiture of Assets.** Defendant agrees to forfeit to the United States, immediately, all of Defendant's right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to the offenses set forth in Counts 1 and 2 of the Indictment. This property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and includes but is not limited to the following: Approximately $1,000 in U.S. currency, seized from HUGHES on or about June 12, 2019, in Federal Way, Washington.

For the purposes of forfeiture, Defendant agrees that the above-described property constitutes, or is derived from, proceeds of the offenses set forth in Counts 1 and 2.

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effectuate such forfeiture; assisting in bringing any assets located outside the United States within the jurisdiction of the United States; and taking whatever

Plea Agreement - 12
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim to any of the above-described property in any federal forfeiture proceeding, administrative or judicial, which may be or has been initiated.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in or over which Defendant has any interest or control, if that property constitutes or is derived from proceeds of the offenses charged in Counts 1 or 2.

14. **Abandonment of Contraband.** Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

15. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

Plea Agreement - 13
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

17. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty pleas required by this plea agreement, Defendant waives all rights to appeal from Defendant's conviction and any pretrial rulings of the Court. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

Plea Agreement - 14
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

      a.    Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

      b.    Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

18.    **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

19.    **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

20.    **Completeness of Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties,

Plea Agreement - 15
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

except as may be set forth on the record at the change of plea hearing in this matter. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 30th day of April, 2020.

_____
MICHELLE RENEE HUGHES
Defendant

_____
COREY ENDO
Attorney for Defendant

_____
GRADY J. LEUPOLD
Assistant United States Attorney

_____
ANGELICA WILLIAMS
Assistant United States Attorney

Plea Agreement - 16
U.S. v. Michelle Renee Hughes, CR19-124RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970